**UNITED STATES, Appellant,**

v.

**Rickie A. COCHRANE,**
**Defendant, Appellee.**

**UNITED STATES, Appellant,**

v.

**Joni SEPLOCHA, Defendant, Appellee.**

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1989.

Decided Feb. 21, 1990.

Michael E. Davitt, Sp. Atty., U.S. Dept. of Justice, Washington, D.C., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., and Edward J. Gale, Asst. U.S. Atty., were on brief, for appellant.

John F. Cicilline, for defendant, appellee Rickie A. Cochrane.

Lise J. Gescheidt with whom C. Leonard O'Brien, Providence, R.I., was on brief, for defendant, appellee Joni Seplocha.

Before BOWNES, Circuit Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and BREYER, Circuit Judge.

VAN GRAAFEILAND, Circuit Judge.

The United States appeals from an order of the United States District Court for the District of Rhode Island, 715 F.Supp. 23, suppressing evidence against the defendants, Rickie A. Cochrane and Joni Seplocha. For reasons that follow, we reverse.

On May 18, 1988 a state district court judge issued a warrant authorizing the search of the defendants' residence on Branch Avenue in Providence, Rhode Island for controlled substances and related paraphernalia. In the course of the search, the Rhode Island State Police found and seized three firearms. Because Cochrane and Seplocha had prior felony convictions, a federal grand jury indicted them for unlawful possession of firearms in violation of 18 U.S.C. § 922(g)(1). Both defendants moved to suppress evidence of the firearms, and Seplocha moved in addition to suppress a statement regarding the guns that she made at the time of the search. After an evidentiary hearing, a United States magistrate recommended to the district court that the motions to suppress be denied. The defendants objected to the magistrate's findings and recommendations, and, after further hearings, the district court granted the motions to suppress. Its stated grounds were that the affidavit in support of the search warrant contained a false statement that had been included with reckless disregard for the truth and that, after excising the false statement, the affidavit was insufficient to establish probable cause.

The affidavit was verified on May 18, 1988 by Corporal James Mullen of the Rhode Island State Police. Mullen stated therein it was his "belief" that the defendants possessed and sold illegal substances at the Branch Avenue premises. He based this belief on information supplied by a confidential informant, coupled with his own investigation which disclosed that defendants "are in the criminal business of distributing controlled substances." In the penultimate paragraphs of his affidavit, Corporal Mullen said:

> During the week of May 10, 1988, your affiant was again in contact with the confidential informant and he advised that he had purchased marijuana and heroin from Ricky Cochrane and Joni Seplocha at their residence, as well as meeting them by a pre-arrangement, after discussing the sale of illegal drugs over telephone number 401–861–6708.

> Your affiant is also aware of the criminal background of both Cochrane and Seplocha and attached to this affidavit are said criminal records.

> Based on the previously-stated facts, it is your affiant's belief that Ricky Cochrane and Joni Seplocha are selling illegal substances and have illegal substances in their possession and control, along with other drug-related paraphernalia, at the previously-mentioned address.

A common-sense approach to this affidavit, see *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d

---

* Of the Second Circuit, sitting by designation.

684 (1965), leads almost ineluctably to the conclusion that Mullen did not purport to rely on his own purchases of drugs at the Branch Avenue premises when he expressed his "belief" that such sales were taking place and specifically referred to purchases made by a confidential informant. If Mullen himself had purchased the drugs, which, admittedly, he had not done, he would "know", not "believe", they were being sold, and repeated references to a confidential informant would be unnecessary. Moreover, the affidavit discloses at another point that Officer Mullen was known by both Cochrane and Seplocha through prior contacts he had had with them, and, therefore, it is most unlikely that he, a police officer, would be attempting to purchase drugs from them.

■ The district court concluded, however, that Mullen falsely and recklessly stated at another point in his affidavit that he himself had purchased drugs at the Branch Avenue house. In pertinent part, that portion of the affidavit reads as follows:

> This [confidential] informant is advising your Affiant that a narcotics nuisance is presently being conducted at the above-mentioned location which is being operated and controlled by Ricky A. Cochrane and Joni Seplocha. This informant has advised that both Cochrane and Seplocha are supplying heroin, cocaine, and marijuana to persons unknown to your Affiant's informant.
>
> Your affiant's knowledge in this matter is predicated upon previous purchases of these illegal substances which he has made from both Cochrane and Seplocha at the above-mentioned address. This informant has provided your affiant with telephone number 401–861–6708, and is the telephone number at which to contact Cochrane and Seplocha, as both Cochrane and Seplocha have given the informant this telephone number at which to contact him.

If we were to lift the first sentence of the second above-quoted paragraph from its informative surroundings and examine it in isolation, it may be that we would reach the same conclusion as did the district court, namely, that the word "he" referred to Mullen rather than the informant. However, the legal sufficiency of a search warrant affidavit should not be determined by a process of isolated dissection. The affidavit should be read "in its entirety, giving significance to each relevant piece of information" and should not be judged in "bits and pieces of information in isolation." *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (per curiam); *see United States v. Badessa*, 752 F.2d 771, 773–74 (1st Cir.1985). Moreover, the affidavit, viewed in its entirety, must be given a common-sense and realistic, rather than a hypertechnical interpretation. *Massachusetts v. Upton, supra*, 466 U.S. at 732–34, 104 S.Ct. at 2087–89; *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *United States v. Calle–Cardenas*, 837 F.2d 30, 31 (1st Cir.), *cert. denied*, 485 U.S. 1024, 108 S.Ct. 1582, 99 L.Ed.2d 897 (1988); *Haefeli v. Chernoff*, 526 F.2d 1314, 1319 (1st Cir.1975). In the process, great deference should be given to the judicial officer who concluded in issuing the warrant that a showing of probable cause was made. *Illinois v. Gates, supra*, 462 U.S. at 236, 103 S.Ct. at 2331; *United States v. Drake*, 673 F.2d 15, 18–19 (1st Cir.1982).

The magistrate to whom the suppression motion was referred by the district court "found no confusion" in the challenged language and "understood [it] to mean that Corporal Mullen's informant purchased the illegal substances from Defendants at the Branch Avenue address." The magistrate stated that he himself was not misled by the affidavit and that, in his opinion, no other judicial officer was misled.

Guided, as we must be, by the legal principles above set forth, we conclude that the magistrate was right and that the use of the word "he" in the challenged sentence was at most a grammatical mishap, neither reckless nor intentional in nature. We reach this conclusion with full awareness that a district court's basic or historical finding of fact may be set aside only if

clearly erroneous, *United States v. Moore*, 790 F.2d 13, 15 (1st Cir.1986), and we recognize that this rule applies even where, as here, the district court's finding is based almost entirely on documentary evidence, *In re Tully*, 818 F.2d 106, 108–09 (1st Cir. 1987). This does not mean, however, that such a factual finding cannot be vacated if, after reviewing the record, we are firmly convinced that the district court made a mistake. *See, e.g., United States v. Jobin*, 535 F.2d 154, 157 (1st Cir.1976).

We are firmly convinced, after a common-sense reading of the affidavit as a whole, that, when Mullen stated "he" had purchased drugs at 875 Branch Avenue, he meant that the informant had made the purchase. This sentence comes in the middle of six paragraphs that refer to the activities and knowledge of the confidential informant. The immediately preceding sentence reads, "This informant has advised that both Cochrane and Seplocha are supplying heroin, cocaine, and marijuana to persons unknown to your Affiant's informant." It is simply unreasonable to conclude that, in the middle of talking about the informant's knowledge, Mullen suddenly would switch to a discussion of purchases by himself and then immediately switch back to the activities of the informant. When the sentence is read in context, the only logical conclusion one can reach is that the word "he" refers to the informant, not to Mullen. *See United States v. Marcello*, 508 F.Supp. 586, 605 (E.D.La.1981), *aff'd sub nom. United States v. Roemer*, 703 F.2d 805 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983).

The Supreme Court's oft-quoted opinion in *United States v. Ventresca, supra*, 380 U.S. 102, 85 S.Ct. 741, emphasized that affidavits for search warrants are "normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Id.* at 108, 85 S.Ct. at 746. *See also Illinois v. Gates, supra*, 462 U.S. at 235, 103 S.Ct. at 2331; *United States v. Abrams*, 615 F.2d 541, 550 (1st Cir.1980) (Campbell, J., concurring). In the unstructured progress of such an investigation, grammatical lapses similar to the one in the instant case do occur on occasion. *See, e.g., United States*

*v. Rumney*, 867 F.2d 714, 720 n. 9 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989) ("The affidavit refers to the affiant in the plural 'we' although it was signed by only one officer"); *see also United States v. Dorfman*, 542 F.Supp. 345, 369 (N.D.Ill.1982), *aff'd sub nom. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354 & 1355, 84 L.Ed.2d 377 (1985). We have a firm conviction that, after reading the affidavit as a whole, the issuing judge could not have believed that Mullen himself had purchased drugs from the defendants at their Branch Avenue residence.

Even assuming for the sake of argument that the challenged statement was made recklessly, if the statement is set to one side and the totality of circumstances evidenced in the balance of the affidavit supports a finding of probable cause, the evidence properly uncovered during the search need not be suppressed. *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978); *United States v. Rumney, supra*, 867 F.2d at 719–20; *Grimaldi v. United States*, 606 F.2d 332, 336 (1st Cir.), *cert. denied*, 444 U.S. 971, 100 S.Ct. 465, 62 L.Ed.2d 386 (1979). Unlike the district court, our review of Mullen's affidavit in redacted form satisfies us that it provided ample support for the issuing judge's finding of probable cause. It disclosed, among other things, that:

(1) Mullen, a 15–year veteran of the Rhode Island State Police and a member of its Narcotics Unit, was involved with other members of the Narcotics Unit in ongoing narcotics investigations;

(2) The defendant Seplocha, a former Rhode Island lawyer, had been disbarred after being sentenced on drugs and weapons charges;

(3) On January 15, 1988, other members of the Narcotics Unit who were surveilling a heroin distribution point, arrested Seplocha when she left that point with heroin in her possession;

(4) Seplocha was the girlfriend of defendant Cochrane and both of them had criminal records;

(5) Mullen knew from his own independent investigation that defendants were in the criminal business of distributing drugs;

(6) Mullen personally had conducted numerous surveillances of both defendants when they resided together at 51 Glendale Avenue in Providence;

(7) For some time Mullen had been receiving information from a "confidential and reliable" informant, who admitted that he was a purchaser and user of drugs;

(8) This informant previously had provided Mullen with information regarding drug trafficking which led to the seizure of a controlled substance and an arrest, and also had provided information concerning the criminal activity of individuals not associated with a drug investigation;

(9) The informant also had advised Mullen that a narcotics nuisance "presently" was being conducted at the Branch Avenue residence and was being operated and controlled by the defendants, who were supplying heroin, cocaine and marijuana at that location;

(10) Defendants "recently" had moved to the Branch Avenue address from their former residence on Glendale Avenue;

(11) According to the informant, one of the reasons for moving was that defendants feared police surveillance and wiretaps and moved frequently to avoid police monitoring of their criminal activities;

(12) Police surveillance participated in by Mullen established that both defendants resided at the Branch Avenue address;

(13) During the week of May 10, 1988, the informant told Mullen that he had purchased marijuana and heroin at the defendants' Branch Avenue residence.

■ Over the years, much has been written about the standards for appellate review of findings of "ultimate fact", more properly known as mixed questions of law and fact. Differences, in some instances irreconcilable, exist in the opinions of both the Supreme Court[1] and the Courts of Appeal of the various Circuits.[2] This court has adhered steadfastly to the rule that findings of both historic and ultimate fact are tested by the "clearly erroneous" rule on appeal. *See Lynch v. Dukakis,* 719 F.2d 504, 513 (1st Cir.1983); *Fortin v. Commissioner,* 692 F.2d 790, 794 (1st Cir. 1982). At the same time, however, we "look carefully" to see that the district court's findings of fact are not infected by legal error, *Hallquist v. Local 276, Plumbers and Pipefitters Union,* 843 F.2d 18, 22 (1st Cir.1988); *Kumar v. Board of Trustees,* 774 F.2d 1, 9 (1st Cir.1985), *cert. denied,* 475 U.S. 1097, 106 S.Ct. 1496, 89 L.Ed.2d 896 (1986); *Sweeney v. Board of Trustees,* 604 F.2d 106, 109 n. 2 (1st Cir. 1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980), and that the district court has not misconstrued applicable legal principles, *Thrifty Rent–A–Car System, Inc. v. Thrift Cars, Inc.,* 831 F.2d

---

1. *Helvering v. Tex–Penn Oil Co.,* 300 U.S. 481, 490–91, 57 S.Ct. 569, 573–74, 81 L.Ed. 755 (1937); *Baumgartner v. United States,* 322 U.S. 665, 670–71, 64 S.Ct. 1240, 1243–44, 88 L.Ed. 1525 (1944); *Townsend v. Sain,* 372 U.S. 293, 309 n..6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963); *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *Pullman–Standard v. Swint,* 456 U.S. 273, 284–90, 102 S.Ct. 1781, 1787–91, 72 L.Ed.2d 66 (1982); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 500–01, 104 S.Ct. 1949, 1959–60, 80 L.Ed.2d 502 (1984); *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

2. *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 937 (2d Cir.), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981); *Washington v. Watkins,* 655 F.2d 1346, 1351–54 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); *Schuneman v. United States,* 783 F.2d 694, 699 (7th Cir.1986); *Miller v. Wainwright,* 798 F.2d 426, 428–29 (11th Cir. 1986), *vacated and remanded on other grounds sub nom. Dugger v. Miller,* 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 513 (1987). *See also Pullman–Standard v. Swint, supra,* 456 U.S. at 289–90 n. 19, 102 S.Ct. at 1790–91 n. 19.

1177, 1181–82 (1st Cir.1987); *Foggs v. Block*, 722 F.2d 933, 938 (1st Cir.1983), *rev'd on other grounds*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985).

This appears to accord with the Supreme Court's most recent pronouncements in this area. Thus, in *Bose Corp. v. Consumers Union of United States, Inc., supra*, 466 U.S. 485, 104 S.Ct. 1949, Justice Stevens, writing for the Court, said that "[t]he conclusiveness of a 'finding of fact' depends on the nature of the materials on which the finding is based" and that "[a] finding of fact in some cases is inseparable from the principles through which it was deduced." *Id.* at 500–01 and nn. 16 & 17, 104 S.Ct. at 1959–60 and nn. 16 & 17. In the same vein, Justice O'Connor, writing for the Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982), observed that "if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard." *Id.* at 855 n. 15, 102 S.Ct. at 2189 n. 15. A "careful look" at the district court's decision has convinced us that the district court did not weigh the contents of the redacted affidavit in accordance with the legal standards enunciated in *Massachusetts v. Upton, supra*, 466 U.S. 727, 104 S.Ct. 2085, and *Illinois v. Gates, supra*, 462 U.S. 213, 103 S.Ct. 2317, and it also misinterpreted several common-sense legal theorems and presumptions well recognized by this court.

Prior to the Supreme Court's decision in *Illinois v. Gates, supra*, 462 U.S. 213, 103 S.Ct. 2317, federal judges customarily applied the "two-pronged test" enunciated by the Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). "It was thought that the affidavit, first, must establish the 'basis of knowledge' of the informant—the particular means by which he came by the information given in his report; and, second, that it must provide facts establishing either the general 'veracity' of the informant or the specific 'reliability' of his report in the particular case." *Massachusetts v. Upton, supra*,

466 U.S. at 730, 104 S.Ct. at 2086–87. The *Upton* Court emphasized that in *Illinois v. Gates, supra*, 462 U.S. 213, 103 S.Ct. 2317, the Supreme Court rejected this two-pronged test "as hypertechnical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Massachusetts v. Upton, supra*, 466 U.S. at 732, 104 S.Ct. at 2087 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). The purpose of this change was to eliminate "excessively technical dissection of informants' tips" and the "judging [of] bits and pieces of information in isolation against the artificial standards provided by the two-pronged test." *Massachusetts v. Upton, supra*, 466 U.S. at 732, 104 S.Ct. at 2087.

At the very outset of its discussion, the district court espoused an erroneous principle that apparently colored its thinking on the entire issue before it. Referring to a dictum in *Jaben v. United States*, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370–71, 14 L.Ed.2d 345 (1965), a tax evasion case, to the effect that the credibility of informants in narcotics cases or other garden varieties of crimes might be less reliable than the credibility of those who furnished information in that case, the district court held that, because the informant in the instant case "was himself a user of illegal narcotics", his trustworthiness had to be "carefully assessed." Section 404 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, codified as amended, 21 U.S.C. § 844, makes it generally unlawful to knowingly or intentionally possess a controlled substance. If Mullen's informant admitted that he purchased narcotics from the defendants, he admitted that he violated this statute. In *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), Chief Justice Burger, writing for a majority of the Court, said:

People do not lightly admit a crime and place critical evidence in the hands of police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry

their own indicia of credibility—sufficient at least to support a finding of probable cause to search.

*Id.* at 583, 91 S.Ct. at 2082. *See also United States v. Figueroa,* 818 F.2d 1020, 1024 (1st Cir.1987); *United States v. Santarpio,* 560 F.2d 448, 453 (1st Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *United States v. Chapdelaine,* 616 F.Supp. 522, 526 (D.R.I.1985), *aff'd mem.,* 795 F.2d 75 (1st Cir.1986).

In his acclaimed dissent in *Donnelly v. United States,* 228 U.S. 243, 277, 33 S.Ct. 449, 461, 57 L.Ed. 820 (1913), Justice Holmes said that "[t]he rules of evidence in the main are based on experience, logic, and common sense...." This dissent played a substantial role in the enactment of Rule 804(b)(3) of the Federal Rules of Evidence, which provides a hearsay exception for statements which so far tend to subject the maker to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true. *See United States v. Winley,* 638 F.2d 560, 561–62 (2d Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982). The practical, common-sense approach exemplified by Rule 804(b)(3) and the above-cited cases is the approach that the district court should have taken. *See Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970); *United States v. Reivich,* 793 F.2d 957, 959–60 (8th Cir.1986).

■ Proceeding from what we conclude was an improper foundation, the district court found the information concerning the informant's "veracity" or "reliability" to be scarce. It also found references to the informant's "track record" to be unsatisfactory because the record did not disclose that the evidence provided by the informant on prior occasions had resulted in convictions rather than simply in arrests. Citing a law review article written in 1974, the district court concluded that there was no way to assess the credibility of the informant "based on this record of the information he had given on past occasions."

We believe that this reasoning is flawed. The sworn statement of Officer Mullen, a veteran police officer, that his informant was "reliable" and that prior information provided by him had resulted in seizure of a controlled substance and an arrest should not be belittled because, to the date of the affidavit, there had not yet been a conviction. Such a requirement misconstrues the whole concept of probable cause. *See Brinegar v. United States, supra,* 338 U.S. at 175, 69 S.Ct. at 1310. "A finding of probable cause can be supported by less evidence than is required to support a conviction." *United States v. White,* 766 F.2d 22, 25 (1st Cir.1985). The purpose of a search warrant affidavit, and a confidential informant's contribution thereto, is simply to establish that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332.

■ Indeed, Chief Justice Burger, writing in *United States v. Harris, supra,* 403 U.S. at 573, 91 S.Ct. at 2077, held that a warrant affidavit did not even require an averment of previous reliability, the appropriate inquiry always being whether the informant's present information is truthful or reliable. *Id.* at 581–82, 91 S.Ct. at 2081. In this respect, an important indicia of reliability is the fact that the informant's knowledge was based upon personal observation rather than hearsay. *Id.* at 581, 91 S.Ct. at 2081; *see United States v. Moscatiello,* 771 F.2d 589, 599 (1st Cir.1985) (quoting with approval a statement in *United States v. Freitas,* 716 F.2d 1216, 1221 (9th Cir.1983), that if an "informant [speaks] with personal knowledge, then the information is usually deemed reliable enough to support a finding of probable cause"), *vacated and remanded on other grounds sub nom. Rooney v. United States,* 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986). *See also United States v. Ciampa,* 793 F.2d 19, 24 (1st Cir.1986).

■ The affidavit disclosed that only a few days before it was executed the confidential informant had informed Mullen that he had purchased marijuana and heroin from the defendants at their Branch Ave-

nue residence. The district court nonetheless held that, since the informant did not state whether the purchase in question was made "during that week or ten months before", the information was "fatally flawed" as the basis for a finding of probable cause. This observation overlooked other information in the affidavit to the effect that the defendants had "recently moved" to the Branch Avenue address from their former residence on Glendale Avenue. "When an affidavit in support of a search warrant does not contain the date of the activities therein alleged, but is factually related to other information before the magistrate which does contain the date, it is permissible to draw the inference that the events took place in close proximity to the date given." *United States v. Bonilla Romero*, 836 F.2d 39, 46 (1st Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). Moreover, we are concerned in the instant case with drug dealings, a continuing pattern of criminal conduct, not a crime consisting of a single transaction. *See United States v. Nocella*, 849 F.2d 33, 40 (1st Cir.1988); *United States v. Campbell*, 732 F.2d 1017, 1019 (1st Cir.1984).

In sum, after reviewing the affidavit in a common-sense manner, both in toto and in redacted form, we hold, for all the reasons above stated, that it provided a substantial basis from which to conclude that the Rhode Island police had probable cause to search the Branch Avenue premises. Accordingly, the order of the district court is

REVERSED.