May 21, 1993
 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 
No. 93-1018
 UNITED STATES OF AMERICA,

 Appellee,

 v.

 RICKIE ALBERT SCALIA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 

 Friedman,* Senior Circuit Judge,
 

 and Cyr, Circuit Judge.
 

 

 James Michael Merberg with whom Susan J. Naughton was on brief
 
for appellant.
 F. Mark Terison, Assistant United States Attorney, with whom
 
Richard S. Cohen, United States Attorney, and Jonathan R. Chapman,
 
Assistant United States Attorney, were on brief for appellee.

 

 May 21, 1993
 

 

*Of the Federal Circuit, sitting by designation.
 CYR, Circuit Judge. Appellant Rickie Albert Scalia
 CYR, Circuit Judge.
 

entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2),
 

following the district court's denial of his motion to suppress

evidence seized from his residence pursuant to a search warrant.

He now appeals, see id., his conviction for unlawful "manufac-
 

ture" of marijuana, 21 U.S.C. 841(a)(1); 18 U.S.C. 2, and a

criminal forfeiture conviction under 21 U.S.C. 853. Scalia

also challenges the mandatory minimum five-year sentence imposed

pursuant to 21 U.S.C. 841(b)(1)(B)(vii) (minimum sentence of

five years for "manufacture" of one hundred or more marijuana

plants). Scalia contends that the affidavit supporting the

search warrant application was insufficient to establish probable

cause, and that the district court lacked sufficient reliable

evidence on which to find that more than one hundred marijuana

plants were seized from his residence. Finding no error, we

affirm.

A. Probable Cause
 

 On February 14, 1992, Agent Kenneth MacMaster of the

Maine Bureau of Intergovernmental Drug Enforcement (BIDE) applied

for a state court warrant to search appellant's residence for

marijuana and related paraphernalia. MacMaster's supporting

affidavit relied upon, inter alia, information provided by a
 

confidential informant described as a "young concerned citizen."

The informant told MacMaster that he had visited the Scalia

residence on numerous occasions and as recently as ten days

before coming to MacMaster. The informant said that he had

observed two marijuana plants a foot tall in appellant's living

room, five eighteen-inch plants in the bedroom, and from forty-

five to fifty plants of various sizes in a basement walk-in

cooler. The informant told MacMaster that s/he was able to

recognize the plants because s/he had "received instruction from

his/her school concerning various drugs," and that some of the

informant's family and friends were casual marijuana users. The

marijuana plants in the walk-in cooler were being grown under

artificial lights operated by switches installed outside the

padlocked cooler door. The informant observed that other rooms

in appellant's residence and rooms in an adjacent horse barn were

padlocked as well, and that Scalia kept several shotguns and a

handgun on the premises. On at least four occasions, the infor-

mant observed Scalia selling marijuana at either his residence or

his business premises.

 The primary contention Scalia makes on appeal is that

the MacMaster affidavit did not establish the reliability and

veracity of the informant because (1) MacMaster did not explicit-

ly attest that the informant had no prior criminal record; (2)
 

the informant apparently had not provided information to law

enforcement officials previously; and (3) MacMaster did not

 4

attempt to corroborate the informant's tip through follow-up

surveillance efforts at appellant's residence.1

 We review the issuance of a search warrant with "great

deference," United States v. Ciampa, 793 F.2d 19, 22 (1st Cir.
 

1986), to verify that there existed a "substantial basis" for the

judicial officer's common-sense determination that, "given all

the circumstances set forth in the affidavit . . . , including

the 'veracity' and 'basis of knowledge' of persons supplying

hearsay information, there [was] a fair probability that contra-

band or evidence of a crime [would] be found in a particular

place." United States v. Caggiano, 899 F.2d 99, 102 (1st Cir.
 

1990) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).
 

 The MacMaster affidavit stated that the informant was

"not currently facing any criminal or juvenile charges nor is
 

he/she under suspicion for any wrongdoing." (Emphasis added.)

Appellant first suggests that MacMaster's use of the word "cur-

rently" was deliberate wordplay a statement which was techni-

cally true but designed to camouflage the fact that the informant

had confronted criminal or juvenile charges in the past. Gener-
 

 

 1Appellant likewise contends that the affidavit heavily depended
on "stale" evidence, namely DEA and BIDE debriefing interviews with
appellant's alleged associates implicating appellant in similar drug
trafficking activities as far back as 1986-87. As the recent informa-
tion provided by the informant was sufficient to establish probable
cause, we need not address the "staleness" claim. See United States
 
v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992) ("Staleness does not
 
undermine the probable cause determination if the affidavit contains
information that updates, substantiates, or corroborates the stale
material."), cert. denied, 113 S. Ct. 1382 (1993).
 

 5

ally speaking, the representations contained in a search warrant

affidavit are presumed valid and truthful. United States v.
 

Spinosa, 982 F.2d 620, 626 (1st Cir. 1992). To mount an effec-
 

tive challenge based on an alleged use of deliberate or reckless

falsehoods by an affiant, a defendant must request an evidentiary

hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). A
 

Franks hearing is required only if the defendant makes a "sub-
 

stantial preliminary showing (1) that a false statement in the

affidavit has been made knowingly and intentionally, and (2) that

the false statement is necessary for the finding of probable

cause." United States v. Paradis, 802 F.2d 553, 558 (1st Cir.
 

1986). The defendant's offer of proof must be "more than con-

clusory" and should be supported by "[a]ffidavits or sworn or

otherwise reliable statements of witnesses." Franks, 438 U.S. at
 

171. A comparable showing is required if the defendant would

establish that technically accurate statements by an affiant have

been rendered misleading by material omissions. See United
 

States v. Rumney, 867 F.2d 714, 720 (1st Cir.), cert. denied, 491
 

U.S. 908 (1989).

 Appellant neither requested a Franks hearing nor
 

attempted an offer of proof relating to any material omission

from the MacMaster affidavit. Moreover, on appeal there has been

no showing that the informant ever had a criminal or juvenile

record, or any other involvement with the law, which might

 6

undermine the reliability of the affidavit. We therefore find no

basis for concluding that the informant had a prior record.

 Next, appellant suggests that the reliability of first-

time information provided by a "concerned citizen" should be

considered inherently suspect, since law enforcement officials

can have had no "track record" against which to assess the

informant's competence to convey accurate intelligence relating

to criminal activities, or the trustworthiness of the informant's

motives in volunteering information. We disagree. "[A] warrant

affidavit [need not contain] an averment of previous reliability,

the appropriate inquiry always being whether the informant's

present information is truthful or reliable." United States v.
 

Cochrane, 896 F.2d 635, 641 (1st Cir.) (citing United States v.
 

Harris, 403 U.S. 573, 581-82 (1971)) (emphasis added), cert.
 

denied, 496 U.S. 929 (1990). In the absence of a prior record of
 

reliability, we have recognized that, where the informant was

"not a professional . . . but a private citizen with no known
 

criminal record or other criminal contacts, who came forward on
 

his own . . . [,] the informant's story may be more easily

accepted . . . ." United States v. Campbell, 732 F.2d 1017, 1019
 

(1st Cir. 1984) (citing United States v. Burke, 517 F.2d 377,
 

379-81 (1st Cir. 1975)) (emphasis added). Since there is no

evidence that the informant who came to MacMaster either had a

criminal record, or was suspected of current criminal activity, a

 7

neutral judicial officer fairly could find that the informant was

a "private citizen" who volunteered the information to MacMaster.

 Furthermore, "an informant's reliability need not

invariably be demonstrated through the detailed narration of the

information previously furnished to law enforcement . . . .
 

Rather, the affidavit may disclose an adequate basis for evaluat-

ing the informant's veracity through the very specificity and
 

detail with which it relates the informant's first-hand descrip-
 

tion of the place to be searched or the items to be seized."

United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (citing
 

Caggiano, 899 F.2d at 102-03) (emphasis added); see also Coch-
 

rane, 896 F.2d at 641 ("[A]n important indicia (sic) of reliabil-
 

ity is the fact that the informant's knowledge was based upon

personal observation rather than hearsay."). As is apparent from
 

our recitation of the confidential information provided to

MacMaster, the particularity of the informant's description of

the interior and contents of the residence (e.g., padlocked
 

doors, multiple firearms), the location, size, and number of

marijuana plants, the marijuana growing apparatus (e.g., basement
 

cooler, artificial lights), and the illegal marijuana sales

conducted by appellant inside the search premises, provided

considerable intrinsic support for the informant's capacity to

 8

convey reliable intelligence relating to the criminal activity

attested to in the affidavit.2

 Finally, appellant argues that MacMaster should have

corroborated the informant's tip before applying for a search

warrant, preferably through surveillance of Scalia's residence.

Corroboration may take various forms, however, and we have never

intimated that surveillance is mandatory. See, e.g., Taylor, 985
 

F.2d at 6 (finding probable cause where corroboration of infor-

mant's tip did not go beyond check of target's criminal record).

The confidential informant's tip to MacMaster comported with

information received from other sources, including previous BIDE

debriefing interviews with several of Scalia's former associates,

see supra note 1, as well as informal complaints lodged with the
 

Maine State Police by eight unidentified citizens expressing

concerns about Scalia's drug trafficking activity.

 The combined force of the informant's detailed tip,

MacMaster's expert assessment, and the corroborative police

reports provided substantial support for a common-sense determi-

nation by the issuing judge that there existed a fair probability

 

 2MacMaster, a BIDE agent for thirteen years, had participated in
more than eighteen hundred drug investigations. He attested both to
the informant's demeanor during the interview and to the authenticity
of the informant's description of the suspected criminal activity
("impressed by the honesty of this person and his/her ability to
describe events which he/she had seen"). See, e.g., Taylor, 985 F.2d
 
at 6 ("[T]he issuing magistrate properly may credit the experience and
pertinent expertise of a law enforcement affiant in evaluating the
authenticity of the informant's description of the target's modus
operandi.").

 9

that marijuana and related paraphernalia would be found in

appellant's residence.

B. Mandatory Minimum Sentence
 

 A defendant convicted under 21 U.S.C. 841(a)(1) is

subject to a mandatory five-year minimum sentence if the court

finds by a preponderance of the evidence that the defendant

manufactured or possessed "100 or more marijuana plants regard-

less of weight." 21 U.S.C. 841(b)(1)(B)(vii). See United
 

States v. McMahon, 935 F.2d 397, 400 (1st Cir.), cert. denied,
 

112 S. Ct. 272 (1991). Were it not for the mandatory statutory

minimum, appellant would have been exposed to a 46-to-57 month

guideline sentencing range (Level 23, Criminal History Category

I), based on the total weight of the marijuana plants (111.8

kilograms) seized at his residence. See U.S.S.G. 2D1.1(c)(9)
 

(100 KG-400 KG marijuana; level 26); id. 3E1.1(a), (b) (3-level
 

reduction for acceptance of responsibility); id. 5G1.1(b)
 

("Where a statutorily required minimum sentence is greater than

the maximum of the applicable guideline range, the statutorily

required minimum sentence shall be the guideline sentence.").

 At the time the search warrant was executed, an agent

for the Maine Drug Enforcement Agency, Bruce Bristow, visually

examined the marijuana plants found on the premises. Based on

his education and experience, Bristow concluded that all 112

plants were marijuana. He randomly selected fifteen plants, and

 10

submitted these representative plants (ranging from one and one-

half inches to two feet tall) for chemical analysis.3 The

chemical analysis confirmed that all fifteen samples were mari-

juana plants. Following an evidentiary hearing, the district

court found that all 112 plants were marijuana. Scalia was

sentenced to the mandatory minimum five-year term.

 The district court's drug-quantity finding was based on

four factors: (1) Bristow's trained visual identification of all

plants seized at the search scene as marijuana; (2) the fact that

all the plants were seized contemporaneously from the same

location; (3) the positive chemical analysis on all fifteen

sample plants tested, and (4) the absence of evidence that

appellant was growing anything other than marijuana. Appellant

challenges only the first factor relied on by the district court,

by attempting to undercut the reliability of Bristow's visual

identification. Appellant argues that Bristow conceded that at

least two other plant species which grow in Maine look like

marijuana when they are only one and one-half inches tall.

Appellant's claim fails for two reasons.

 First, while the record reflects that Bristow testified

that two marijuana look-alikes do grow in Maine, he never stated

 

 3Bristow seized 67 plants from the bedroom, measuring from 1 1/2
inches to 10 inches in height, and 45 plants from the basement cooler,
all measuring 24 inches "more or less." Bristow then divided the
plants into three groups (i.e., 1 1/2 inch, 10 inch, and 24 inch) and
took five samples from each group. 

 11

that his training and experience left him incapable of distin-

guishing these look-alikes from marijuana.4 Rather, Bristow

stood by his visual identification. Cf. United States v. Maceo,
 

873 F.2d 1, 6 (1st Cir.) (extrapolations of drug quantity involve

issues of credibility and weight of evidence reserved for trier

of fact), cert. denied, 493 U.S. 840 (1989); United States v.
 

Echeverri, 982 F.2d 675, 677 (1st Cir. 1993) (qualification of
 

"expert" witness reviewed only for manifest abuse of discretion).

 Second, the other factors relied on by the district

court strongly support its drug-quantity determination as well.

See United States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991)
 

(factual findings on drug quantity reviewed for "clear error").

"Although the sentencing court must 'err on the side of cau-

tion[,]'" United States v. Barnett, F.2d , [Nos. 91-
 

 

 4The relevant exchange was as follows:

 Counsel: Based on your training and experience, has it been
 brought to your attention that there are two other
 plant-like substances that exhibit similar characteris-
 tics to the marijuana plant?

 Bristow: Yes.

 Counsel: How many different ones to your knowledge?

 Bristow: That I've run across in the State of Maine, two. There
 may be more, two that I'm very familiar with.
 

 Counsel: All right. And part of your training is to attempt to
 differentiate between these similar plants and the ones
 which are in fact marijuana?

 Bristow: Yes, sir.

 12

1890, 91-1891, 92-1778, slip op. at 12 (1st Cir. Mar. 29, 1993)]

(approximating producible quantity of controlled substance based

in part on amount of precursor chemicals seized) (quoting United
 

States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990)), drug-quanti-
 

ty estimations need not be statistically or scientifically

precise. See U.S.S.G. 6A1.3 ("In resolving any reasonable
 

dispute concerning a factor important to the sentencing determi-

nation, the court may consider relevant information without

regard to its admissibility under the rules of evidence applica-

ble at trial, provided that the information has sufficient
 

indicia of reliability to support its probable accuracy.")
 

(emphasis added); United States v. Uwaeme, 975 F.2d 1016, 1018
 

(4th Cir. 1992) (noting that drug-quantity estimations may be

based on hearsay, nonscientific testimony, defendant's notebook

entries, street values of drugs equivalent to money seized from

defendant, or on extrapolations of potential drug output from

seized components).

 More to the present point, courts have endorsed statis-

tically based drug-quantity extrapolations predicated on random

test samples in circumstances where the government was able to

demonstrate an "adequate basis in fact for the extrapolation and

that the quantity was determined in a manner consistent with the

accepted standards of [reasonable] reliability." United States
 

v. McCutchen, F.2d , (3d Cir. 1993) [No. 92-1536,
 

1993 U.S. App. LEXIS 7651, at 11 (3d Cir. Apr. 13, 1993)]; United
 

 13

States v. Pirre, 927 F.2d 694, 697 (2d Cir. 1991) ("It is suffi-
 

cient for the government to show that its method of estimating

the total [amount of drugs] is grounded in fact and is carried

out in a manner consistent with accepted standards of reliabili-

ty."); see also Barnett, F.2d at [Nos. 91-1890, 91-1891,
 

92-1778, slip op. at 13] ("We must determine whether the govern-

ment presented sufficient reliable evidence to permit the court

reasonably to conclude that appellants were responsible for a

quantity of drugs at least equal to the quantity threshold for

the assigned base offense level."). For example, sufficient

indicia of reliability may be found where a preponderance of the

evidence demonstrates that (1) a proper "random" selection

procedure was employed; (2) the chemical testing method conformed

with an accepted methodology; (3) the tested and untested samples

were sufficiently similar in physical appearance; and (4) the

tested and untested samples were contemporaneously seized at the

search scene. See McCutchen, F.2d at [No. 92-1536, 1993
 

U.S. App. LEXIS 7651, at 11-12 (3d Cir. Apr. 13, 1993)]. In sum,

the overall margin of reliability in a drug-quantity approxi-
 

mation must be adequate to afford reasonable assurance that the

defendant is not subjected to a guideline sentence or a mandated

minimum sentence greater than warranted by the reliable evi-

 14

dence.5 Given the relatively light burden of proof, the reason-

able reliability of the drug-quantity sampling and extrapolation

procedures employed by the government, and the utter absence of

countervailing drug-quantity evidence, we affirm the district

court's findings. 

 Affirmed.
 

 

 5A videotape of Bristow's "random" plant selection procedure was
received in evidence. Unlike the drug weight extrapolation in
 
McCutchen, chemical analysis of the fifteen sample plants selected by
 
Bristow permitted a straightforward extrapolation as to the total
number of plants. The plants, all exhibiting the telltale saw-toothed
 
leaf structure, were seized on the same day from the same residence,
giving rise to a "strong inference" that only marijuana plants were
seized. McCutchen, F.2d at [No. 92-1536, 1993 U.S. App.
 
LEXIS 7651, at 13 (Apr. 13, 1993)]. Finally, more than twelve of the
seized plants (i.e., over 10% of the total) would have had to test
 
negative in order to bring the total below the 100-plant cutoff
required to trigger the mandatory five-year minimum sentence under 21
U.S.C. 841(b)(1)(B)(vii). Yet all fifteen random samples tested
positive for marijuana.

 15