16 F.3d 412
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Luis ACEVEDO, a/k/a Louie, a/k/a Pedro Pineyro, a/k/a
Jose Luis Acevedo-A bad, Defendant-Appellant,
 No. 93-5280.
 United States Court of Appeals,
Fourth Circuit.
 Argued: Oct. 29, 1993.
Decided: Jan. 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-427-A)
 Joseph N. Bowman, Alexandria, Virginia, for Appellant.
 John Nicholas Nassikas, III, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Kenneth E. Melson, United States Attorney, Justin W. Williams, Assistant United States Attorney/Chief, Criminal Division, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-appellant, Jose Luis Acevedo, appeals his conviction and sentence for conspiracy to possess with intent to distribute and distribute five kilograms or more of cocaine and fifty grams or more of cocaine base (crack) in violation of 21 U.S.C.Secs. 841(a)(1) and 846. Finding no error, we affirm.
 
 
 2
 * From 1988 until May 1992, Acevedo, and a coconspirator, Osmund Lasbrey, supplied Brooks Seldon with large amounts of cocaine and crack for distribution. In January 1990, the Drug Enforcement Administration (DEA) began investigating the activities of the conspiracy. During the investigation, Special Agent David Roward obtained a warrant to search Acevedo's residences located on West 134th Street in New York City and 7 Casta Lane in Edgewater, New Jersey. During the search of these residences, the DEA recovered, among other things: a triple-beam scale; a money counting machine; a safe; and various documents that inculpated Acevedo to various members of the conspiracy.
 
 
 3
 On October 7, 1992, a grand jury in the Eastern District of Virginia returned a one count indictment charging Acevedo and Lasbrey with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine and fifty grams or more of crack, 21 U.S.C. Secs. 841(a)(1) and 846. On November 9, 1992, Acevedo filed a motion to suppress the evidence seized upon the search of the two residences. After a hearing on Acevedo's motion to suppress, the district court denied the motion. After a jury trial, Acevedo was convicted. The district court sentenced Acevedo to life imprisonment. Acevedo appeals.
 
 II
 
 4
 On appeal, Acevedo asserts four assignments of error, only one of which merits discussion. Acevedo contends Roward's affidavit failed to establish probable cause to believe that evidence of a crime would be found at his residences.
 
 
 5
 In his ninety-one page application for a search warrant, Roward presented evidence that, among other things: (1) Acevedo maintained residences located on West 134th Street in New York City and 7 Casta Lane in Edgewater, New Jersey; (2) numerous sources indicated that Acevedo and Lasbrey supplied Seldon with cocaine; (3) Seldon received between twenty and thirty kilograms of cocaine per week from Acevedo and Lasbrey; (4) in 1988, a confidential informant drove Seldon to meet Acevedo in New York where Seldon received cocaine from Acevedo; (5) in October 1990, Acevedo and his girlfriend delivered cocaine to Seldon; (6) in April 1991, Acevedo's car was parked in front of an apartment where Seldon cooked crack; (7) in July 1991, a DEA agent overheard Seldon on the telephone discussing cocaine prices with Acevedo; (8) in August 1991, Acevedo's Toyota Four Runner was parked in front of an apartment suspected of drug activity in Bladensburg, Maryland[1]; (9) in August 1991, Seldon brought a large sum of money to Acevedo's house in Edgewater, New Jersey, and, on the following day, Acevedo delivered eight or nine kilograms of cocaine to Seldon at the apartment in Bladensburg, Maryland; (10) between August 1991 and October 1991, sixteen telephone calls were made from the Bladensburg apartment to Acevedo's apartment in New York City and forty-six telephone calls were made between the Bladensburg apartment and Lasbrey's apartment in New York City; and (11) between November 27, 1991 and December 10, 1991, twenty-five phone calls were made between Seldon's apartment located on Greenbelt Road in Greenbelt, Maryland and Acevedo's residence in Edgewater, New Jersey. In addition, the warrant affidavit stated that: (1) all of the information derived from confidential informants was corroborated from independent sources of information; (2) two of the four confidential informants utilized by the investigation admitted being involved in the conspiracy and provided information in exchange for leniency; and (3) Roward believed that the information provided by the confidential informants was truthful and reliable.
 
 
 6
 Determining whether probable cause exists to issue a search warrant for a particular place requires a:
 
 
 7
 [P]ractical, common-sense decision whether, given all the circumstances set forth in the affidavit ... including the "veracity" and "basis of knowledge" of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 
 
 8
 Illinois v. Gates, 462 U.S. 213, 238 (1983). The affidavit must be "viewed in its entirety," and "must be given a common-sense and realistic, rather than a hypertechnical interpretation." United States v. Cochrane, 896 F.2d 635, 637 (1st Cir.), cert. denied, 496 U.S. 929 (1990) (citations omitted). In evaluating the sufficiency of the affidavit, we must give " 'great deference' " to the judicial officer who concluded prior to issuing the warrant that a sufficient showing of probable cause had been made. Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). In establishing the requisite link between the objects of the search and the place to be searched, we have rejected the notion that for a warrant to pass constitutional muster the affidavit must state that the objects of the search will be found in the place to be searched. United States v. Anderson, 851 F.2d 727, 729 (4th Cir.1988), cert. denied, 488 U.S. 1031 (1989). Rather, a "nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." Id. (citations omitted).
 
 
 9
 We believe the information provided in Roward's affidavit was more than sufficient to support a Gates probable cause finding that evidence of drug activity would be found in Acevedo's residences. First, the evidence in Roward's affidavit clearly establishes--and Acevedo does not dispute--that the residences searched belonged to Acevedo. Second, the evidence in Roward's affidavit was replete with corroborative evidence that Acevedo was a major supplier of cocaine to Seldon, supplying him with twenty to thirty kilograms of cocaine per week. Third, there was evidence in the record that Acevedo received a large amount of cash at the Edgewater address on at least one occasion. Fourth, the affidavit included evidence that numerous phone calls were made from residences known to be related to drug activity to Acevedo's residences. Fifth, the evidence provided by the four confidential informants and other coconspirators was corroborated. Unquestionably, under these circumstances, it was eminently reasonable to believe that evidence of drug activity would be recovered in Acevedo's residences. Anderson, 851 F.2d at 729.[2]
 
 III
 
 10
 Acevedo presents other issues which he contends should be resolved in his favor. These alleged errors include a claim that: (1) the district court erred in allowing a coconspirator to testify that the substance which Acevedo supplied was actually cocaine; (2) there was insufficient evidence to support his conviction; and (3) the district court's factual finding that the cocaine involved in the conspiracy exceeded 1,500 kilograms is clearly erroneous. After careful review of the briefs, the record, and oral argument, we find these claims lack merit. Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The affidavit states that Seldon lived in this apartment in the summer of 1991, but later moved to an apartment on Greenbelt Road in Greenbelt, Maryland
 
 
 [2]
 In any event, even if the affidavit did not sufficiently establish a finding of probable cause, the DEA justifiably relied in good faith on the determination that probable cause existed. This makes the DEA's reliance on the warrant immune from attack unless the affidavit on which the warrant was based was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " United States v. Leon, 468 U.S. 897, 923 (1984) (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). We cannot conclude that the DEA's reliance on the warrant was"entirely unreasonable."