UNITED STATES of America

v.

Hartland STODDART, Appellant

No. 01–2183.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) Sept. 12, 2002.

Filed Sept. 12, 2002.

Before SLOVITER and RENDELL, Circuit Judges, and McCLURE,* District Judge.

*OPINION OF THE COURT*

SLOVITER, Circuit Judge.

Hartland Stoddart[1] appeals his conviction following a jury trial on two counts for conspiracy and distribution and possession with intent to distribute more than 1,000 kilograms of marijuana. He raises five issues, most of them focusing on the sub-

---

* Hon. James F. McClure, Jr., United States District Court for the Middle District of Pennsylvania, sitting by designation.

1. The appellant's name is spelled "Stoddart" in the filings for the Court of Appeals but is spelled "Stoddard" in the filings for the District Court. This opinion will use "Stoddart," the spelling from the filings to the Court of Appeals and the correct spelling according to the Presentence Report.

stance distributed as marijuana. We consider them in turn.

## I.

### Background

Stoddart was charged on two counts: conspiracy to distribute and possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 and distribution and possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, aiding and abetting. Stoddart's conviction was one of several in a marijuana trafficking scheme whereby large amounts of marijuana were shipped from the west coast to the east coast and delivered to a third party via Federal Express drivers. Three of Stoddart's co-defendants, Wilza Pierre, Matthew Michael Brown, and James Berry, entered guilty pleas. One co-defendant, Wayne Sims, was tried with Stoddart and acquitted.

As part of the scheme, a Federal Express driver, James Berry, who was recruited by Mark Anthony Black, also known as "D," received boxes addressed to places on his route that Berry had provided to D. He delivered those boxes to Brown, Pierre, and eventually Stoddart, at the direction of D.

Of particular relevance here is Berry's testimony that he made three deliveries to Stoddart in February 2000. Stoddart was not charged with the first two deliveries of 60 to 65 boxes of marijuana. The February 22 delivery, which Stoddart was charged with, was of 74 boxes containing over 1,500 kilograms of marijuana.

At trial, Stoddart admitted that he rented a truck using a false name at the direction of D, whom he knew as "JR." Stoddart met Berry at the Jersey Gardens Mall in New Jersey to retrieve the boxes, but Berry refused to make the delivery because he was being followed by the police. Instead, Berry delivered the boxes to Stoddart at the Federal Express facility. Both men were in communication with D over their cellular phones during the transaction, and Stoddart admitted that his voice appears on those communications and that he spoke to Berry on the phone. Unbeknownst to all, the police were monitoring the phone calls and observing the delivery. After picking up the boxes, Stoddart was stopped and arrested.

Stoddart, Berry, and three other co-defendants were charged on a three-count indictment. All of the co-defendants, including Stoddart, were charged with Count One, conspiracy to distribute and possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Stoddart and Berry were charged with Count Three, distribution and possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Following return of the indictment, Stoddart filed pre-trial motions on September 18, 2000 including a motion to suppress evidence based on an allegedly illegal search of the truck which contained the marijuana. The motion was denied. After his conviction, Stoddart filed a post-trial motion for judgment of acquittal or new trial, which was also denied. Thereafter, the District Court applied a two-level sentencing enhancement under U.S.S.G. § 3C1.1 for obstruction of justice and sentenced Stoddart to 151 months incarceration, followed by five years of supervised release. This appeal followed.

## II.

## Discussion

Stoddart raises four different grounds in his appeal of his conviction—that the laboratory testing was insufficient to establish that all of the evidence was marijuana, that the evidence to convict him on the distribution charge was insufficient, that the jury instruction was biased, and that the District Court erroneously denied his pre-trial motion to suppress. He also appeals the two-level upward adjustment of his sentence for obstruction of justice.

## A.

## Sufficiency of Evidence

This court conducts a plenary review over appeals on sufficiency of the evidence and "interpret[s] the evidence in the light most favorable to the government as the verdict winner." *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir.1998).

### 1. *Sampling of marijuana*

■ Stoddart argues that because the government only tested 2.52 kilograms of marijuana from the approximately 1,500 kilograms seized, the government did not provide enough evidence to show that each of the 74 boxes picked up contained marijuana. We have held that the government may extrapolate drug quantity from a test sample as long as it shows that there was "an adequate basis ... for the extrapolation and that the quantity was determined in a manner consistent with accepted standards of reliability." *United States v. McCutchen*, 992 F.2d 22, 25–26 (3d Cir. 1993). The government is not required to "produce expert statistical evidence on sampling techniques." *Id.* at 26. "Rather, reasonable reliability is the touchstone of the determination." *Id.*

Stoddart contends that there was no evidence presented at trial to show that all of the boxes were opened and examined. However, Detective Richard Frascella testified that each box contained two bundles, each of which was wrapped in plastic tape, and that he weighed and marked all of the bundles. Each box contained approximately 50 to 60 pounds of marijuana. Detective Frascella also testified that he pulled random samples out of ten of the bundles for testing. Stoddart did not challenge this latter testimony, and he stipulated to the chemist's report of the amount of marijuana tested.

Detective Frascella's testimony regarding the bundles of marijuana was unchallenged, and it provides an adequate basis for the jury to find that Stoddart possessed over 1,500 kilograms of marijuana. We have previously decided that random testing provides sufficient evidence to discern the quantity of drugs seized. *See McCutchen*, 992 F.2d at 24–25 (finding that extrapolating 15 weighed and tested vials to 104 untested vials to charge defendant with 9.866 grams of crack cocaine was permissible); *United States v. Dent*, 149 F.3d 180, 191 (3d Cir.1998) (finding that method used to extrapolate the total weight of the crack cocaine was sufficient). In this case, the amount of drugs are not at issue, as all of the bundles were weighed. At issue is only whether or not all of the bundles contained marijuana. The government presented sufficient evidence for the jury to reach the conclusion that all of the bundles contained marijuana.

## 2. *Distribution*

■ Stoddart claimed that it was error to deny his Rule 29 motion for acquittal on Count Three, which charged that Stoddart "did knowingly and intentionally distribute and possess with intent to distribute more than 1,000 kilograms of marijuana." Appellant App. at 36. Before the case was submitted to the jury, Stoddart moved for partial acquittal on Count Three, arguing that there was insufficient evidence to support a verdict for distribution of marijuana. The District Court denied the motion but permitted an amendment to the verdict sheet which asked the jury to indicate the basis for their verdict. The special verdict differentiated between the distribution and possession with intent to distribute sections of Count Three and asked the jury to determine Stoddart's guilt under either ground. The jury found Stoddart guilty pursuant to both theories.

Stoddart argues that there was insufficient evidence to support the jury's finding that he distributed marijuana, one of the two grounds under which he was convicted of Count Three, but he does not challenge the sufficiency of evidence to show possession. However, in *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court held that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." This was later reiterated in *Griffin v. United States*, 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), where the Supreme Court noted that while general verdicts have been set aside because one of the possible theories was unconstitutional or illegal, there is no case law setting aside a general verdict because one of the possible bases is unsupported by the evidence. *Id.* at 56. In a concurrence, Justice Blackmun suggested that in the future, the government should submit special interrogatories or charge the crimes as separate counts to avoid juror confusion and possible convictions on insufficient grounds. *Id.* at 61. The verdict sheet in this case asked the jury to determine on

which ground it found Stoddart guilty. The jury responded that it found Stoddart guilty under both theories. Because the jury found Stoddart guilty under one of the two theories for Count Three, a partial acquittal is not justified and the conviction should stand.

## B.

### Jury Instruction

■ Stoddart challenges the jury instruction for the conspiracy charge. The instruction read: "A conspiracy poses a greater threat to society than does a single wrongdoer acting alone. For this reason, a conspiracy to commit a federal crime is an entirely separate offense from the commission of the crime itself." Appellant App. at 121.

According to Stoddart, the explanation of the law was unnecessary and prejudicial because it focused the jury on the severity of the crime. This court reviews the wording of the jury instructions for abuse of discretion. *United States v. Yeaman*, 194 F.3d 442, 452 (3d Cir.1999).

While this court has not addressed this wording of a conspiracy instruction, a substantially similar instruction was found not unduly prejudicial in *United States v. Lopez*, 937 F.2d 716, 725 (2d Cir.1991). In *Lopez*, the challenged portion of the jury instruction stated that "conspiracy poses 'a greater potential threat to the public interest than the illegal activity of a single individual since it often makes possible the attainment of ends more complex than those which an individual acting alone could accomplish.'" *Id.* The court found that it was "almost identical to a description of conspiracy given by the Supreme Court" in *Callanan v. United States*, 364 U.S. 587, 593–594, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961) and was within the district court's discretion. *Lopez*, 937 F.2d at 725.

Here, the instruction merely explained the purpose behind the conspiracy charge and why the crime of conspiracy is charged separately than the act itself. This was not prejudicial to the defendant, particularly when taken in the context of the entire instruction.

## C.

### Motion to Suppress Physical Evidence from Illegal Search

■ Prior to trial, Stoddart moved to suppress the evidence taken from the truck as fruits of an illegal search. The District Court denied the motion and refused to hold a hearing as Stoddart had not submitted any affidavits or other evidence that the search was illegal, but rather argued that the government should be held to its proof. The standard of review of a district court's decision whether to hold an evidentiary hearing on a motion to suppress is generally agreed to be abuse of discretion. *See United States v. Calderon*, 77 F.3d 6, 9 (1st Cir.1996) ("The decision to hold an evidentiary hearing is committed to the discretion of the district court and our review is for abuse of that discretion."); *United States v. Howell*, 231 F.3d 615, 620 (9th Cir.2000), *cert. denied*, —— U.S. ——, 122 S.Ct. 76, 151 L.Ed.2d 40 (2001); *United States v. Glass*, 128 F.3d 1398, 1408–09 (10th Cir.1997).

A district court may deny a motion to suppress without a hearing when the defendant fails to provide a factual basis for the hearing and merely relies upon the government's "burden of proof to establish adequate *Miranda* warnings." *Howell*, 231 F.3d at 621. Stoddart did not submit an affidavit or testimony setting forth the basis for the requested hearing but merely stated that because the stop was warrantless, the government had the burden of showing that the stop was justified. Un-

der the circumstances, the District Court did not abuse its discretion in denying a hearing on the motion to suppress.

In reviewing the decision to deny the motion to suppress, "this court may look at the entire record." *Gov't of Virgin Islands v. Williams,* 739 F.2d 936, 939 (3d Cir.1984). We have stated that "[a]lthough *Terry* allows an investigative stop, it still requires reasonable suspicion before the government can justify even this limited intrusion." *United States v. Kithcart,* 134 F.3d 529, 532 (3d Cir.1998). Reasonable suspicion is a suspicion supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Harple,* 202 F.3d 194, 196 (3d Cir.1999) (quotations omitted).

■ The police had reasonable suspicion to stop Stoddart's vehicle after conducting surveillance on Berry and Stoddart, particularly the intercepted cell phone conversations in which the parties expressed concern about whether Berry was being followed by police and commented on their unwillingness to make a delivery in the mall parking lot where cameras provided surveillance. This was an adequate basis for the police to have reasonable suspicion and to stop Stoddart without a warrant, as he was in a vehicle that might soon be out of reach. As the stop was permissible, the District Court did not err in denying the motion to suppress.

Stoddart also challenges the District Court's determination that the search was voluntary and that he was properly advised of his *Miranda* rights. However, Stoddart offers no factual allegations to support this claim. The District Court's determination that Stoddart consented to the search and was informed of his rights should be affirmed.

## D.

### Sentencing Enhancement for Perjury

■ In his last claim, Stoddart argues that the District Court erroneously enhanced his sentence by two levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice based on a finding that he had committed perjury during his testimony at trial. This court reviews the "district court's factual determination of willful obstruction of justice for clear error, and its legal interpretation and application of the sentencing guidelines under a plenary standard." *United States v. Powell,* 113 F.3d 464, 467 (3d Cir.1997).

Stoddart does not challenge the District Court's application of a preponderance of the evidence standard. In order to find that a defendant obstructed justice by committing perjury, the district court "must make findings to support all the elements of a perjury violation in the specific case." *United States v. Dunnigan,* 507 U.S. 87, 97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In this case, the District Court found that Stoddart testified falsely in claiming that he did not know that the boxes contained marijuana, in explaining his use of a false name and credit card, and in denying his contacts with Berry and D. The District Court further found that these lies were material and willful. He rented the truck using a false driver's license and credit card, he was told by D that the person delivering the boxes believed he was being followed so the delivery spot had to be changed, he was looking out for cars following him, he refused to pick up the packages in a lot monitored by a security camera, and he peeled off the shipping labels for the $5,000 promised by D until D called and told him to cross into New York. In light of our conclusion that there was sufficient evidence to find that Stoddart knew the

boxes contained marijuana, the District Court's findings were not clearly erroneous. Thus, it did not commit error when it imposed the two-level sentencing enhancement for obstruction of justice.

## III.

### Conclusion

For the reasons set forth, we will affirm Stoddart's conviction and sentence.