

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2005

# USA v. Phung

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4544

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Phung" (2005). *2005 Decisions.* Paper 1370.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1370

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4544

UNITED STATES OF AMERICA,

v.

DIEN VY PHUNG

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cr-689-01)
District Judge: Honorable Petrese B. Tucker

Submitted Under Third Circuit LAR 34.1(a): January 13, 2005

Before: ROTH and CHERTOFF,[*] *Circuit Judges*,
and IRENAS,[**] *Senior District Judge.*

(Filed: April 13, 2005)

---

[*] This case was submitted to the panel of Roth, Chertoff and Irenas. Judge Chertoff subsequently resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46 (d).

[**] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

---

OPINION

---

IRENAS, *Senior United States District Judge.*

Appellant Dien Vy Phung was convicted in the Eastern District of Pennsylvania of one count of conspiracy to distribute 3,4 methylenedioxymethamphetamine ("MDMA" or "Ecstasy"), in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute MDMA, in violation of 21 U.S.C. § 841(a)(1). He appeals the District Court's denial of his motion for a *Daubert* hearing, its admission of the testimony of the Drug Enforcement Administration ("DEA") chemist, and its determination regarding the quantity of drugs for sentencing purposes. We will deny his appeal.

Appellant was arrested on September 26, 2002, after arranging the sale of approximately 7,560 pills of MDMA to a woman who was cooperating with agents from the Pennsylvania Office of the Attorney General, the DEA and the Bureau of Narcotics Investigation and Drug Control. Agents seized three MDMA pills handed to the woman by Appellant. Appellant's co-conspirator, Son Thanh Le ("Le"), was apprehended by the Upper Merion Township Police, who seized 7,560 pills from the back of Le's car.

On October 23, 2002, the grand jury returned indictments against Appellant and Le, charging them with conspiracy to distribute MDMA and possession with intent to distribute MDMA. Judge Petrese Tucker granted Appellant's motion for severance on

December 16, 2002.[1]

Appellant filed a motion in limine on May 2, 2003, requesting that the District

Court limit the testimony of Jennifer Espinosa ("Espinosa"), a DEA chemist and expert

witness for the government, based on her use of an improper sampling method. Appellant

requested that Judge Tucker hold a hearing in accordance with *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). On May 5, 2003, Judge Tucker denied the

motion.

Appellant's trial began on May 6, 2003. Appellant renewed his objections to

certain portions of Espinosa's testimony, and cross-examined Espinosa regarding the

sampling method for testing the pills. (Supp. App. II, 376, 394-98.) Appellant was found

guilty on both counts on May 9, 2003. On November 23, 2003, the District Court

imposed a sentence of 132 months imprisonment, three years supervised release, a fine of

$20,000 and a special assessment of $200. Appellant filed a timely appeal with this

Court.


II.

We review a district court's ruling regarding the admissibility of expert testimony

for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001). A

district court's determination regarding the quantity of drugs for sentencing purposes is

reviewed for clear error. *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).

---

[1]Le was convicted of both counts after a three day trial, beginning on March 4, 2003.

III.

Appellant argues that the District Court was *required* to hold a *Daubert* hearing as a result of his objections to the sampling methodology employed by Espinosa. Espinosa testified that she followed the sampling plan developed by the DEA statistical department to select which of the 7,560 pills to test. (Supp. App. II, 385-86.) She tested the three pills handed to the cooperator by Appellant, and found all three to contain MDMA. Espinosa divided the remaining pills into three containers.[2] Espinosa drew handfuls of pills out of each container and randomly selected a set number of pills to test, as determined by the sampling methodology.[3] Espinosa then performed two tests on the pills which revealed that all of the pills tested contained MDMA, a color test[4] and a gas chromotography/mass spectrometry test.[5] A total of 93 pills were tested and all were

[2] The first container included pills that were similar in appearance, but some were stamped with a horse logo and some were stamped with a fish logo. The second group of pills were wet and spongy. The third group consisted of four similar pills, each with the logo of an omega or a circle with a wedge in it.

[3] Espinosa tested 29 pills of each logo type from the first container, 28 pills from the second container and all four pills in the third group.

[4] A color test is performed by adding small samples of the individual pills to various reagents, and if the reagent turns a particular color, the particular pill contains the substance the reagent tested for. In this instance, a sample from each pill was combined with sodium nitropreside, which will turn cobalt blue when MDMA is added to the reagent. The reagent turned blue for every pill tested by Espinosa, presumptively indicating that the pills contained MDMA.

[5] A sample of the item to be tested is injected into the gas chromatograph, which will separate the sample into its individual components. The mass spectrometer will produce a characteristic spectrum for each type of molecule in the components, which enables the molecule to be identified. This test indicated that the pills contained MDMA, as well as acetaminophen and methamphetamine.

found to contain MDMA.

Espinosa also ground up a number of pills from each container, and tested this composite to determine the percentage by weight of MDMA in the tested pills. From this calculation, she extrapolated the total weight of MDMA in the 7,560 pills. Espinosa determined that the total weight of the pills was 2,367 grams, and the amount of MDMA present in those pills was 152.2 grams.

Appellant argues that Espinosa's selection of pills to test was not random, so her extrapolations from those test results are invalid. At trial and on appeal, Appellant offers the expert report of Donald Rubin of Datametrics Research, Inc., which states that the results of a test on a sample can only be extrapolated to those items that could have been in the sample.[6] Appellant contends that Espinosa's test results can only be extrapolated to the pills in the handfuls she selected from each container, and not the entire contents of the containers, because the pills not in her handfuls had no chance to be included in the sample.

In addition to holding a *Daubert* hearing, Appellant further contends that the court should have excluded Espinosa's testimony regarding the extrapolation of the total weight. Appellant also argues that Judge Tucker should not have relied on the extrapolated total weight of the MDMA in sentencing him, and instead should have used

---

[6]A statement in the trial record by Appellant's trial counsel indicates that Rubin is the Chair of the Statistics Department at Harvard University. However, the report prepared by Rubin does not indicate this, nor has Appellant provided the *curriculum vitae* of his purported expert.

only the actual weight of MDMA in the pills tested by Espinosa.

The United States contends that the District Court did not abuse its discretion in denying Appellant's request for a *Daubert* hearing or permitting Espinosa to testify about the sampling method she used to test the pills. The United States argues that the sampling method used by Espinosa has been approved by this Court, and that the jury was entitled to hear evidence about Espinosa's test results. The United States also emphasizes that the issue for the jury was not the total quantity of the drug, but whether Appellant possessed any amount of MDMA with intent to distribute. Finally, the United States contends that it was not clear error for Judge Tucker to rely on Espinosa's estimate in imposing a sentence.

A.    *Daubert* hearing

In *Daubert*, the Supreme Court held that Fed. R. Evid. 702 places a special obligation upon the trial judge to "ensure that any and all scientific testimony is not only relevant, but reliable." 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (applying standard established in *Daubert* to all expert testimony). This Court stated in *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994) (*Paoli II*), that "*Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity."

District courts have considerable latitude in deciding how to perform their *Daubert* gatekeeping function. *Kumho Tire*, 536 U.S. at 152. Trial judges have "the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases

where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Id.* The Third Circuit has held that district courts are not required to hold *Daubert* hearings, but may follow the course they see fit to determine the reliability of expert testimony. *Oddi v. Ford Motor Company*, 234 F.3d 136, 154 (3d Cir. 2000) (citing *United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir. 1985)).

The District Court did not abuse its discretion by declining to hold a *Daubert* hearing in response to Appellant's challenge to the testimony of Espinosa. As in *Oddi*, the Appellant "does not even begin to suggest how such a hearing would have advanced his position, and we can not begin to imagine that it would have." *Id.* The sampling method employed by Espinosa was previously approved by this Court against similar challenges by criminal defendants. *See United States v. Dent*, 149 F.3d 180, 190-91 (3d Cir. 1998); *United States v. McCutchen*, 992 F.2d 22, 25-26 (3d Cir. 1993).

Judge Tucker's decision is especially appropriate given that Appellant did not bring a novel challenge to the sampling method, nor did he rely on any new or specific facts in objecting to Espinosa's testimony. *Cf. United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004) ("Thus a district court would not abuse its discretion by limiting, in a proper case, the scope of a *Daubert* hearing to novel challenges to the admissibility of latent fingerprint identification evidence–or even dispensing with the hearing altogether if no novel challenge was raised."). On appeal, he relies only on a report from a statistician

that was prepared for another case, which does not address drug testing generally or the DEA sampling method at issue here.

B.      Admission of Espinosa's testimony

Nor did the District Court err in admitting Espinosa's testimony regarding her extrapolation of the total weight of the MDMA contained in the pills.[7]  Appellant's argument that Espinosa should have randomly drawn each pill directly from the containers, rather than from a handful of pills drawn from those containers, does not convince us that her methodology was not scientifically sound.  Rubin's report criticizes extrapolations from samples drawn by a systematic nonrandom method, such taking only every fiftieth unit in a list.  It is not at all clear whether Rubin's report has anything to say about drug testing or Espinosa's particular method for sampling the pills.

*Daubert*'s reliability requirement does not set a high bar for the admissibility of expert testimony.  *See, e.g. Paoli II*, 35 F.3d at 744-45.  Moreover, *Daubert* does not require a district court to look at whether a proposed expert could have performed his or her analysis in a better manner.  *See Kannankeril v. Terminex Int'l*, 128 F.3d 802, 809 (3d Cir. 1997); *Paoli II*, 35 F.3d at 744 (observing that "good grounds" for an expert's opinion may exist "even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result").  *Daubert* held that "[v]igorous cross-examination, presentation of contrary evidence, and

---

[7]Trial counsel stipulated that Espinosa was qualified as a forensic chemist. (Supp. App. I, 378.)

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

Additionally, several other factors support a finding that Espinosa's methodology in extrapolating the total weight of the MDMA was reliable, and that her conclusion was based on "good grounds." The sampling procedure was designed and approved by the DEA statistical department, and appears to be the standard procedure amongst law enforcement forensic chemists for determining the total weight of a particular drug within a blended substance. In Appellant's case, all pills were seized at the same location during a single attempted sale. The seized pills were divided into containers based on similar appearance and markings. Every pill Espinosa tested contained MDMA.

C.      Sentencing

It was not clear error for the District Court to impose a sentence of 132 months imprisonment based on Espinosa's extrapolation of the total weight of MDMA in the seized pills. At the sentencing hearing, Judge Tucker stated: "[Espinosa's] testimony was convincing to this Court and the jury that based on the amount of pills – the number of pills that were actually tested, *the information could be extrapolated* and she could give us whether or not the pills were all MDMA." (Supp. App. III, 538 (emphasis added).)

For the reasons stated above, we believe that Judge Tucker appropriately relied on Espinosa's estimation of the total weight of the MDMA. In *McCutchen,* this Court held that:

> If a defendant challenges a drug quantity estimate based on an extrapolation
> from a test sample, the government must show, and the court must find, that

there is an adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with accepted standards of reliability.

992 F.2d at 25-26. The evidence in the record supports the District Court's determination that there was an adequate basis in fact for the extrapolation and that the total quantity of MDMA was calculated in a reliable manner.

Appellant also asserts that the 132 month sentence is excessive because sentences of more than ten years for MDMA offenses were only intended for high-level traffickers whose conduct involved at least 8,000 pills. Appellant draws this argument from the reasons stated for Amendment 609, which changed the marijuana equivalency for MDMA.[8] *U.S.S.G. Manual* suppl. to app. C, am. 609, cmt. (2001) ("The penalty levels chosen for MDMA offenses provide five year sentences for serious traffickers (those whose relevant conduct involved at least 800 pills) and ten year sentences for high-level traffickers (those whose relevant conduct involved at least 8,000 pills).").

Commentary to the Guidelines is generally binding on a sentencing court, except in certain circumstances. The Supreme Court in *U.S. v. Stinson* held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. 36, 38 (1993). Here, the commentary is inconsistent

---

[8]Prior to the Amendment, the Drug Equivalency Tables in the Commentary to § 2D1.1 established that one gram of MDMA was equivalent to thirty-five grams of marijuana. Amendment 609 changed the equivalency to five hundred grams of marijuana. The Amendment became effective on May 1, 2001.

with § 2D1.1 and the Drug Equivalency Tables, and therefore is not authoritative.

The United States Sentencing Commission intended that sentences for crimes involving MDMA be calculated based on weight, and not on the number of units, as evidenced by the Drug Quantity Table contained in § 2D1.1 and the Drug Equivalency Tables contained in the Application Notes for the guideline. Amendment 609 itself speaks in terms of weight, indicating that the reference to specific pill quantities reflects only an estimate of the equivalent number of pills. The District Court correctly sentenced Appellant in accordance with the Drug Equivalency Tables and not the comments to Amendment 609.

IV.

For the reasons set forth above, the decisions of the Eastern District of Pennsylvania denying Appellant's motion in limine, admitting the testimony of Espinosa without restrictions and sentencing Appellant in reliance on the extrapolated total weight of the MDMA are affirmed.