**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2754
_____

UNITED STATES OF AMERICA

v.

LUCIEN WILLIAMS,
                                         Appellant
_____

On Appeal from the District Court of the Virgin Islands
(No. 12-cr-00017-002)
District Judge: Honorable Raymond L. Finch
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 14, 2014
_____


Before: RENDELL, FUENTES, GREENAWAY, JR., *Circuit Judges*

(Filed: August 15, 2014 )


_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

After Lucien Williams pleaded guilty to one count of conspiracy to possess with intent to distribute marijuana, the District Court imposed a sentence of 46 months' incarceration. On appeal, Williams raises three issues regarding his sentencing. As none of these challenges have merit, we will affirm Williams's sentence.

I.

Williams was involved with a drug trafficking organization that conspired to mail controlled substances from Texas to St. Croix, Virgin Islands. According to a report by Inspector Halsell of the United States Postal Inspection Service, several express mail parcels containing marijuana and bearing fictitious return addresses were sent to either Williams or his wife.[1] Williams described his involvement in the conspiracy in an interview with Halsell. Prior to a mailing, a coconspirator would inform Williams when and where the package would arrive, and he earned about $500 for each box he received. Williams further admitted that he knew the parcels contained marijuana and that he had opened several of them.

The parties executed a plea agreement and Williams pleaded guilty to the sole charge in the information: conspiracy to possess with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 846, and 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), which carries a statutory sentence of not more than five years of incarceration.

---

[1] Williams maintains that although his wife may have accepted packages at his direction, she knew nothing of their contents and he alone is responsible for the controlled substances.

Later that year the Office of Probation issued a Presentence Investigation Report concluding that 276.69 kilograms of marijuana were attributable to Williams as relevant conduct under the Guidelines. In turn, Williams filed a sentencing memorandum objecting to that amount, arguing that he can only be held responsible for the weight of the parcels specifically mentioned in the plea agreement. Following an evidentiary hearing, the District Court found that 239.84 kilograms was the correct attribution. Accordingly, the District Court applied a base offense level of 23 (26 minus three points for acceptance of responsibility) and sentenced Williams to 46 months' incarceration (the low end of the Guidelines range of 46 months to 57 months), three years of supervised release, and a $100 special assessment.[2]

II.

A.

Williams first argues that the District Court erred by failing to determine (1) the point at which he entered the conspiracy, and (2) what offense conduct was foreseeable to him. The first part of the argument is without merit simply because the District Court did in fact establish the time frame in question in a memorandum opinion before sentencing:

> At the evidentiary hearing, the United States represented that the 2008 through November 4, 2009 timeframe listed in the plea agreement was a typographical error, and the conduct properly attributable to Williams is his receipt of parcels from November 7, 2009 through December 13, 2010, as detailed in Inspector Halsell's report summarizing the Express Mail receipts for those shipments. (Dkt.

---

[2] "We review a district court's legal conclusions regarding the Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error." *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009) (citations omitted).

No. 175-1). The Court's drug quantity finding is based on the shipments sent to Williams during this 13-month period and outlined in Inspector Halsell's report.

*United States v. Williams*, Criminal No. 2012-017, 2013 WL 2279382, at *2 n.2 (D.V.I. May 22, 2013).

Williams next argues that the District Court erred by failing to determine the foreseeability of the offense conduct. The Guidelines provide that the base offense level will be determined on the basis of:

> (1)    (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of *others* in furtherance of the jointly undertaken criminal activity,
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3(a)(1) (emphasis added). As clarified in the commentary, the foreseeability requirement "applies only in respect to the conduct (*i.e.*, acts and omissions) of others under subsection (a)(1)(B)" and not to "conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures or willfully causes" which would fall under subsection (a)(1)(A). U.S.S.G. § 1B1.3 cmt. n. 2.

Here, Williams's offense of conviction is his involvement in a conspiracy that occurred between November 7, 2009 and December 13, 2010. Of the 47 parcels considered by the District Court, 45 were received by Williams or his wife (acting as Williams's proxy) during that time frame and are therefore relevant conduct for

4

sentencing under subsection (a)(1)(A). As such, foreseeability was not a requisite element with regard to those 45 acts.

The two remaining parcels arrived after he had been arrested (December 2010) and his involvement in the conspiracy had ended. While the District Court may have erred in failing to consider foreseeability with regard to those last packages, we need not reach the issue because any error would have been harmless. The two packages at issue were not significant enough to make a difference in the base offense level calculation. Under the Guidelines, a quantity of marijuana that is "[a]t least 100 KG but less than 400 KG" corresponds to a base offense level of 26. U.S.S.G. § 2D1.1(c)(7). If the District Court had excluded the two packages (weighing approximately 4 kilograms each) the total amount of marijuana attributed to Williams would drop from 239.84 kilograms to 231.68 kilograms—a quantity still well within the level 26 range. *Id*.

### B.

Williams's second argument is that the government breached the plea agreement by asserting facts not specifically mentioned in the terms of the agreement. Though Williams failed to raise this issue at sentencing, he argues in his reply brief that this Court's review is de novo because the alleged breach was by the prosecution. *United States v. Rivera*, 357 F.3d 290, 294 (3d Cir. 2004). This standard is no longer good law after the Supreme Court's decision in *Puckett v. United States*. 556 U.S. 129, 134 (2009). Now, if the defendant fails to object below, our review of whether the government breached a plea agreement is for plain error. *United States v. Dahmen*, 675 F.3d 244, 248 (3d Cir. 2012).

To determine whether a plea agreement was breached, we first analyze the facts, including the terms of the plea agreement and the conduct of the parties. *United States v. Hayes*, 946 F.2d 230, 233 (3d Cir. 1991). We begin by considering "what was reasonably understood by the defendant" when he entered his plea. *United States v. Gilchrist*, 130 F.3d 1131, 1134 (3d Cir. 1997) (alterations omitted). Moreover, "cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court." *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992) (quoting *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976)). In the latter case, "courts are compelled to scrutinize closely the promise made by the government in order to determine whether it has been performed." *Hayes*, 946 F.2d at 233. Absent a promise, there can be no breach.

Williams contends that the plea agreement contained a promise by the government that it would not argue any overt acts except those identified in the plea agreement. In the section at issue, the plea agreement listed facts that the government could have proven if the case had gone to trial. It stated that Williams participated in the conspiracy "[f]rom on or about 2008 to on or about November 4, 2009" and then described Williams's receipt of one parcel containing marijuana on June 17, 2010, and two other parcels containing marijuana on July 21, 2010. J.A. at 24-26. Williams now argues that he understood the representations in that section to be inclusive of all overt acts for which he would be held responsible, that any omissions were intentional, and further, that he reasonably relied on that understanding when he submitted his guilty plea.

6

We conclude that the language of the agreement contains no such promise and that Williams could not have reasonably understood the terms of the plea agreement to convey such a promise. The plea agreement lists overt acts but does not contain any limiting language or a promise by the government to refrain from presenting additional acts for sentencing. On the contrary, it was stated later in the plea agreement that the government "believes" that Williams "conspired to distribute at least 307 kilograms of marijuana," "that the base offense level is 26," and that, assuming the court accepted the agreed-upon credits for acceptance of responsibility, the "Sentencing Guidelines range is 46-57 (Level 23) months imprisonment." J.A. at 27-28. These beliefs would not have been expressed in the agreement if, as Williams claims, the parties had already bargained to ignore all acts other than his receipt of the three packages mentioned in the plea agreement. The three packages combined weighed only 13 kilograms, which would have generated a Guidelines range of 15-21 months. As such, we reject Williams's implication of a promise and conclude that the government's conduct did not violate the terms of the plea agreement.

Williams also argues that the District Court's resolution of the typographical error in the plea agreement (correcting the time frame of Williams's involvement in the conspiracy from "2008 through November 7, 2009" to "November 7, 2009 through December 13, 2010") caused the plea agreement to be breached. This argument is without merit because Williams could not have reasonably believed that the plea agreement time frame was correct. Immediately following the time frame of the conspiracy ("[f]rom on or about 2008 to on or about November 4, 2009"), the plea

7

agreement details three overt acts in furtherance of that conspiracy that occurred outside of the preceding time frame (one on June 17, 2010 and two on June 21, 2010). J.A. at 24-26. Thus, both arguments for breach of the plea agreement fail.

C.

Third, Williams argues that the District Court erroneously calculated the quantity of marijuana attributable to Williams by (1) including packages that Williams did not specifically admit to receiving in the plea agreement and for which there was no jury finding, and by (2) estimating the weight of the marijuana in those packages. Both complaints are without merit.

Williams argues, as before, that he cannot be held accountable for any acts not specifically admitted to in the plea agreement. Even if he is correct in limiting his offense of conviction to his receipt of the three packages described in the plea agreement, the District Court correctly considered additional acts as "relevant conduct" under § 1B1.3(a)(2) of the Guidelines, which allows the sentencing court to consider acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). We explained in *Blackmon*:

> Application Note 9 of § 1B1.3 describes what comprises a "common scheme or plan" or the "same course of conduct" for relevant conduct. Subpart (A) describes a "common scheme or plan" as being "substantially connected" by at least one common factor, including common accomplices, common purpose, or similar modus operandi. Subpart (B) describes the "same course of conduct" as "sufficiently connected or related to each other," and involves factors such as the degree of similarity in offenses, the regularity or number or repetitions, and the time interval between offenses.

557 F.3d at 123-24 (citations omitted).

8

In *Blackmon*, we affirmed the district court's sentence and decided that the defendant's involvement in a cocaine conspiracy and his offenses of conviction (money laundering and cocaine distribution) shared a common scheme or plan. *Id*. at 124. Despite a five-month gap between the two occurrences, we found that they shared, among other things, the same pattern of shipments, the same intended customer, the same accomplices and the same geographic scope. *Id*. This similar modus operandi was sufficient to establish that the cocaine conspiracy was relevant conduct under the Guidelines. *Id*.

Similarly, in the instant case the 44 parcels not specifically mentioned in the plea agreement are certainly relevant conduct as contemplated by § 1B1.3. The facts ascertained from the postal inspector's reports, along with Williams's own admissions, provide ample support for the conclusion that these acts were part of the same course of conduct and common scheme or plan as Williams's offense of conviction. Like the three parcels in the plea agreement, all 44 parcels were mailed from Texas (Arlington city area) to either Williams or his wife. Also, 41 of the 44 parcels were mailed to the same address as the three, and 9 of the 44 had the same fictitious return address names as two of the plea agreement parcels. Viewed in light of Williams's admissions—that he received drug packages sent from Texas that he knew to contain marijuana—these facts provide a reasonable basis for the District Court's inclusion of the 44 packages as relevant conduct under § 1B1.3.

Notwithstanding, Williams insists that without either an admission of guilt or a jury finding on each quantity of marijuana attributed to him, the District Court cannot consider the 44 packages not mentioned in the plea agreement without violating his Sixth

9

Amendment rights. However, after the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are merely advisory, which means that "[t]he maximum legislatively authorized punishment to which the defendant is exposed is no longer the maximum prescribed by the Guidelines; instead, it is the maximum prescribed by the United States Code. Therefore, findings of fact relevant to the Guidelines need not be submitted to a jury." *United States v. Grier*, 475 F.3d 556, 564 (3d Cir. 2007) (internal citation omitted).

Here, the plea agreement identified the offense of conviction, which carries a statutory maximum sentence of 5 years. Williams both acknowledged that his lawyer advised him of the 5-year maximum sentence, and confirmed his understanding in his plea application. As Williams's sentence (46 months) did not exceed what was authorized by his pleaded offense, there was no error in the District Court's method of fact-finding relevant to the Guidelines calculations.

Williams also takes issue with the manner in which the District Court estimated the total weight of the marijuana attributed to him. Following the evidentiary hearing, the District Court found that 47 parcels weighing 669.33 pounds were attributable to Williams as relevant conduct under the Guidelines. To properly account for the packaging in its weight calculations, the District Court assumed that the ratio of packaging to marijuana in each of the packages was the same as the intercepted June 14, 2010 package: 79 percent.[3] After subtracting the estimated packaging weight, the court

---

[3] As mentioned in the plea agreement, this package was intercepted and opened by postal inspectors who verified its contents. The other two intercepted packages were not opened,

concluded that the parcels contained a total of 528.77 pounds (239.84 kilograms) of marijuana.

In calculating the quantities of drugs for sentencing drug offenses, we allow for "some degree of estimation" so long as the calculation is not "based on mere speculation." *United States v. Collado*, 975 F.2d 985, 998 (3d Cir. 1992). We further specify:

> The government bears the burden of proving the weight of the drugs involved in an offense by a preponderance of the evidence. When a defendant "challenges a drug quantity estimate based on an extrapolation from a test sample, the government must show, and the court must find, that there is an adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with accepted standards of reliability." This does not, however, require the government to adduce any sort of statistical evidence; rather, "reasonable reliability is the touchstone of the determination."

*United States v. Self*, 681 F.3d 190, 201-02 (3d Cir. 2012) (citations omitted) (quoting *United States v. McCutchen*, 992 F.2d 22, 25-26 (3d Cir. 1993)). The instant case is one in which the District Court made a reasonable assumption based on the ratio of marijuana to packaging in a test sample, and used it to extrapolate the marijuana content of the other packages. In its calculations, the District Court was careful to avoid any improper attribution, rounding each figure down to the nearest hundredth. As such, we find a reasonable basis for the District Court's calculation.

III.

For the foregoing reasons, we will affirm Williams's sentence.

---

but were determined to contain a controlled substance after inspectors observed the reaction of a narcotics dog.